CHARLES M. MACLAREN *vs.* THOMAS COCHRAN, JR., and another.

August 19, 1890.

**Proof Required of Indorsee in Suit against Maker of a Note Procured by Fraud.**—One who has been induced by fraudulent representations to purchase property, giving his negotiable promissory notes therefor, may rescind the contract upon the discovery of the fraud; and if he exercises that right, and asserts it as a defence to an action on his note by an indorsee, it becomes incumbent on the plaintiff, in order to overcome that defence, to show that he purchased the note for a valuable consideration, and without notice of the fraud.

**Rescission of Contract for Fraud which Worked no Real Injury.**—Fraudulent representations, upon which the other party had a right to and did rely, and by which he was induced to enter into a contract when he otherwise would not have done so, justify a rescission; and the party in the wrong should not be heard to say that the misrepresentations were immaterial because no real injury resulted therefrom.

**Effect of Dishonor of Note on Market Value of Others—Expert Testimony.**—The testimony of an expert in the business of negotiating securities *held* admissible to show that the dishonor of a promissory note by the maker would depreciate the market value of other notes of the same maker, given for the same consideration, but not yet mature.

Appeal by defendants from a judgment of $1,180.77, entered in the district court for Ramsey county, pursuant to the decision and order of *Vilas,* J., before whom the action was tried without a jury.

*H. J. Horn,* for appellants.

*Harris Richardson,* for respondent.

DICKINSON, J.   This action is for the recovery of the amount of a negotiable promissory note for $1,000, executed by the defendants to one Reaser in November, 1887, and payable 90 days after its date. The plaintiff alleges the indorsement of the note, for value and before maturity, by the payee to one Espy, and by the latter to himself. The defendants aver that the execution of the note was procured by false and fraudulent representations of Reaser and Espy, (to be hereafter more fully stated,) of which the plaintiff is alleged to have had knowledge; and it is denied that he purchased the note in good faith

and before maturity. The court found that the payee, for value received, indorsed the note to Espy, and that the latter, for value received, indorsed it to the plaintiff. The whole case of the plaintiff consisted in the production of the note indorsed to him, and its introduction in evidence. This made a *prima facie* case for a recovery; but if the evidence presented on the part of defendants showed fraud on the part of Reaser in procuring the execution of the note, it then became incumbent on the plaintiff to establish by affirmative proof that he was entitled to the peculiar protection enjoyed by *bona fide* purchasers. *Cummings* v. *Thompson*, 18 Minn. 228, (246;) *Merchants' Exchange Bank* v. *Luckow*, 37 Minn. 542, (35 N. W. Rep. 434.) If such fraud was shown in this case, and if the defendants seasonably exercised the right of rescission, the determination in favor of the plaintiff cannot stand, for he offered no proof to overcome the effect of such a defence. We must therefore consider whether the defendants made out a case of fraud on the part of the payee, and a defence to this action which would be available except as against a *bona fide* purchaser of the note without notice of the fraud. For this purpose the nature of the transaction between Reaser and the defendants, upon which the note was given, must be explained. On the 23d of October, 1886, more than a year prior to the transaction between the defendants and Reaser, Reaser was seised of certain lands in Dakota, and by assignment from another person held contracts theretofore made by the latter with the Northern Pacific Railroad Company for the purchase of a large quantity of Dakota land from that corporation. On that day Reaser entered into a contract with one Rollin C. Cooper to sell and convey to him such lands, Cooper agreeing on his part to pay to Reaser therefor the sum of $25,000. Five thousand dollars of this was paid at that time, and the remainder of the price was evidenced by five promissory notes of Cooper, each for the sum of $4,000, and payable respectively on or before one, two, three, four, and five years from date. It will be observed that the first of these notes fell due in October, 1887. On the 19th of November, 1887, the defendants purchased from Reaser and took an assignment of his rights and interest under this contract with Cooper. Reaser also conveyed to the defendants by deed the lands which were

the subject of that contract. Reaser also indorsed in blank the above notes of Cooper, excepting the one which had become due in October, 1887, and deposited them in escrow with the St. Paul Trust Company, to be delivered to the defendants on the payment of their notes given in consideration of these premises. As the consideration on their part, the defendants paid $6,000 in cash, and executed to Reaser their negotiable notes, amounting to $6,000. The note in suit is one of those notes.

The defendants alleged false and fraudulent representations in several particulars to have been made by Reaser, personally and by his agent, in this matter, by which the defendants were induced to enter into this contract. It will not be necessary to here refer to more than one of these. The evidence on the part of the defendants showed, without any contradiction, that, in the negotiations which resulted in this contract, Reaser, personally and by his agent, represented that the $4,000 note of Cooper, which had become due about a month before, had been paid. The court found that the above-stated representation was made, and that it was not true, but that it was "immaterial, and no loss or damage is shown to have resulted to the defendants therefrom." We think that the court did not fully appreciate the importance and bearing of this misrepresentation. That the representation was known by Reaser to be untrue, and that it was fraudulent, is to be taken as established by the undisputed evidence. It was also shown that upon the discovery of the alleged fraud the defendants tendered and demanded a rescission of the contract. If Reaser then held the defendants' notes, so that a complete rescission could be effected, they had a right to rescind, and to repudiate all further obligation upon their notes. They were not restricted to the remedy of recovering damages for the fraud. It is true that, since fraud would render the transaction only voidable, and not void, the notes might be so transferred as to make this defence-unavailable as against *bona fide* purchasers, whose rights as such would be preferred to those of the defendants, who had placed it in the power of the other contracting party to transfer an apparently good title. And to constitute one a *bona fide* purchaser so as to be protected against this defence, based on the fraud of the other

v.44m—**17**

contracting party, he must have purchased for a valuable consideration, and without notice of the fraud. *Cochran* v. *Stewart*, 21 Minn. 435. But, unless the plaintiff stood in that position, the right of the defrauded party to rescind, seasonably asserted, would constitute a defence to the action on the note. Upon the case here presented, it cannot be said that this fraudulent representation was immaterial, if the defendants were induced by it to enter into the contract when but for that they would not have done so. Even though it were true that the dishonor of the first of the series of notes, by the refusal of the maker to pay it, did not discredit the other notes and detract from their value as marketable securities, it would not follow that the fraud should be deemed an immaterial matter when the defrauded party asserts a right to rescind the contract which he had been in-duced to enter into by such fraudulent means. If a party is induced to enter into a contract by fraudulent representations as to a fact which he deems material, and upon which he has a right to rely, he may rescind the contract upon the discovery of the fraud, and the party in the wrong should not be heard to say that no real injury can result from the fact misrepresented. *Valton* v. *Nat. Fund Life Assurance Co.*, 20 N. Y. 32; *Smith* v. *Countryman*, 30 N. Y. 655, 670; Pollock, Cont. 499. See, also, *Martin* v. *Hill*, 41 Minn. 337, 343, (43 N. W. Rep. 337.) Obviously, different questions will arise when it is sought to determine the measure of damages recoverable for such a fraud.

The evidence in this case is to the effect that the defendants *did* rely upon the truth of the representations made, and that they would not have purchased these securities and property if they had known that any of the statements were untrue. As respects the representation which we are considering, this testimony was not so unreasonable that it should be disregarded. The note of Cooper for $4,000, already past due when the defendants purchased those not yet mature, was not indorsed to them, and it is not claimed that it was embraced in their purchase. It is, presumably, still outstanding in the hands of some other holder. The maker, Cooper, had refused to pay it. It is not incredible that the marketable value of the other notes of the same series, given by the same maker and for the same con-

sideration, would be materially affected by the fact, if known, that the note already matured had been dishonored by the maker, and was still unpaid. This would naturally suggest to one contemplating a purchase that from the same cause which had led to the dishonor of one of the notes the others might not be paid at maturity, whether that cause might be the financial inability of the maker to pay, or the fact that he disputed his liability on the notes. At least it is reasonable to suppose that the defendants deemed this a material fact.

. Reading the findings of the court, recited above, in the light of the undisputed evidence, we do not understand that the court intended to find that the defendants did not rely upon this statement of fact, or that they were not influenced by the misrepresentation. The meaning of this part of the findings seems to be that while the representation was untrue, yet the misrepresentation was immaterial, *because* no loss or damage is shown to have resulted to the defendants therefrom; that is, they have not shown that the securities and contract right purchased by them were in fact of less value than they would have been if the prior note had not been thus dishonored. This seems to be the reason of the decision, so far at least as this matter is concerned. It was erroneous in that it denied to the defendants the right of rescission for fraud, and confined them to the remedy of damages.

Our conclusion upon this branch of the case is that a case was presented on the part of the defendants which made it incumbent on the plaintiff to show affirmatively that he purchased the note for a valuable consideration, and without notice of the fraud. The decision below, as we construe it, proceeded upon an erroneous view of the law in the particular to which we have referred, and a new trial must be allowed.

The defendant Cochran showed on the trial that he had for 20 years been engaged in dealing in mortgage loans, and paper of all kinds secured upon land. He testified that these securities were of a stated less value by reason of the fact misrepresented than they would otherwise have been. We think that this evidence was competent, not only as tending to show that he *deemed* the representa-

tion in question a material matter, and that it had been an inducement to his entering into the contract, but as tending to show actual damages. We think, therefore, that this evidence ought not to have been stricken out.

Judgment reversed.