## In re BENSON.

### (Circuit Court, S. D. New York. May 26, 1904.)

1. CRIMINAL LAW—REMOVAL OF DEFENDANT—INDICTMENT—SUFFICIENCY.

The sufficiency of an indictment against a federal prisoner is to be determined by the court in which it was found, and is not a proper matter of inquiry in proceedings to remove him to the district in which he is triable.

2. SAME—COMMISSION OF OFFENSE—INDICTMENT—PRIMA FACIE EVIDENCE.

In proceedings to remove a federal prisoner for trial to the district where the offense charged was alleged to have been committed, the indictment is prima facie evidence of the commission of the offense.

3. SAME—EVIDENCE.

In proceedings to remove a federal prisoner for trial to the district where the alleged crime was committed, the fact that evidence introduced failed to establish facts sufficient to constitute the offense charged did not impair the credit of the indictment, nor entitle accused to a discharge, since there may have been other and more persuasive evidence before the grand jury than was offered in such proceeding.

4. SAME—VENUE.

Where, in proceedings to remove a federal prisoner to the District of Columbia for trial, certain counts of the indictment alleged offenses committed there, it was immaterial that other counts and the evidence in such proceeding disclosed offenses committed in another state.

5. SAME—REMOVAL TO DISTRICT OF COLUMBIA.

Rev. St. § 1014 [U. S. Comp. St. 1901, p. 716], provides that, where any offender is committed in any district other than where the offense is to be tried, it shall be the duty of the judge of the district where the offender is imprisoned to issue a warrant for his removal to the district where the trial is to be had. Act Cong. Feb. 21, 1871, c. 62, 16 Stat. 426, declares that the Constitution and all laws of the United States not locally inapplicable shall have the same force and effect within the District of Columbia as elsewhere within the United States. *Held*, that though the District of Columbia was not in existence at the time section 1014 was enacted, and the word "district," as used therein, referred to the judicial districts into which the United States was divided, such section by the act of 1871 became applicable to the District of Columbia, and authorized the removal of a federal offender to such district for trial of an offense committed there.

This is a hearing upon writs of habeas corpus and certiorari. Defendant was arrested upon a warrant issued by a United States commissioner, and, after a hearing before that officer, was committed to await the action of the District Judge upon an application to be made by the United States attorney for a warrant of removal to the District of Columbia for trial upon an indictment found by a grand jury of the Supreme Court of the District of Columbia. The charge is for several separate violations of the provisions of section 5451,

¶ 1. See Criminal Law, vol. 14, Cent. Dig. § 510.

Rev. St. U. S. [U. S. Comp. St. 1901, p. 3680], which punishes with fine and imprisonment any person who promises, offers, or gives any money or thing of value to any officer of the United States with intent to induce him to do or omit to do any act in violation of his lawful duty.

Frank H. Platt and Boardman, Platt & Soley, for petitioner.

Henry L. Burnett, U. S. Atty., and Ernest E. Baldwin, Asst. U. S. Atty., for the United States.

LACOMBE, Circuit Judge. It is now well settled that the sufficiency of the indictment is to be determined by the court in which it was found, and is not matter of inquiry in removal proceedings. Greene v. Henkel, 183 U. S. 249, 22 Sup. Ct. 218, 46 L. Ed. 177; Beavers v. Henkel, 24 Sup. Ct. 605, 48 L. Ed. ——. This indictment avers that defendant was engaged in fraudulent operations under the land laws; that, under orders of the Secretary of the Interior, an investigation of his alleged frauds was begun; that the investigators were to report to the secretary for the exclusive consideration and use of the proper officers of the department; that one Harlan was an officer of the department to whom such report would come; and that, on a day named, defendant gave a specified sum of money to Harlan, with intent to induce him to reveal to defendant, when the same should come to his hands, the contents of the said report. The principal criticisms of the indictment are that it does not sufficiently aver that the report was one to be kept secret and confidential, nor that it was Harlan's "lawful" duty not to reveal its contents to the individual whose malpractices it described, and that, since the report was not in existence when the officer was bribed, the offense charged could not be committed, because the contingency specified (the making of the report) might never happen. These objections, however, are to be determined, as above suggested, in the court which found the indictment. On any ordinary and natural construction of its language, it sets forth an offense under section 5451, Rev. St. [U. S. Comp. St. 1901, p. 3680].

It has been held in Beavers v. Henkel, 24 Sup. Ct. 605, 48 L. Ed. ——, that, in proceedings to remove, the indictment itself is prima facie evidence of the commission of the offense charged. In this proceeding no evidence was introduced by defendant controverting any of the averments of the indictment. The government, however, called several witnesses, and undertook to prove the offense independently of the indictment. Defendant insists that their testimony falls short of establishing the necessary facts. It is unnecessary to go into any analysis of this proof. Even if it failed in some particulars, that circumstance does not impair the credit of the indictment. Non constat but what there was other and more persuasive evidence before the grand jury.

It is further contended that as to some of the counts the evidence shows that the offense was committed in California, where the letter inclosing the bribe was mailed, not in Washington, D. C., where it was received. It is unnecessary to discuss this question here, since

concededly the offenses charged in the other counts were committed in Washington.

Finally it is contended that under section 1014, Rev. St. [U. S. Comp. St. 1901, p. 716], there can be no removal to the District of Columbia. That section reads as follows:

"Sec. 1014. For any crime or offense against the United States the offender may * * * by any commissioner of a circuit court to take bail * * * be arrested and imprisoned or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense * * * and where any offender or witness is committed in any district other than that where the offense is to be tried, it shall be the duty of the judge of the district where such offender or witness is imprisoned, seasonably to issue, and of the marshal to execute, a warrant for his removal to the district where the trial is to be had."

This was originally (with a slight change, which is concededly of no importance) section 33 of the original judiciary act (Act Sept. 24, 1789, c. 20, 1 Stat. 91). At the time of its original enactment there was no District of Columbia, and the word "district," as used in the section, applied to the appropriate judicial district, viz., to one of the judicial districts into which by that act the United States was divided. Reliance is had upon the opinion of Judge Brown in Re Dana (D. C.) 68 Fed. 898. That case, however, went off on the proposition that "libel in the District of Columbia does not belong to the class of offenses contemplated or provided for by section 33 or by section 1014, [since] * * * there has never been any statute, either of the United States or of the state of Maryland, making libel a criminal offense." The learned judge does discuss removals generally, but that part of the opinion is obiter. In the case at bar we have a crime or offense against the United States, and it is to be expected that, even if the language of the original section were not sufficient to include the District of Columbia, Congress has provided in some way against the extraordinary result of its legislation, whereby an individual who might commit murder upon the steps of the Capitol could live in undisturbed security, provided he succeeded in getting beyond the limits of the District of Columbia before he was arrested. The act of February 21, 1871, c. 62 (16 Stat. 426), now section 93 of the Revised Statutes of the District of Columbia, has apparently provided for such a case as this. It reads:

"Sec. 93. The Constitution and all laws of the United States, which are not locally inapplicable, shall have the same force and effect within the District of Columbia as elsewhere within the United States."

This places the District of Columbia, so far as practicable, on an equality of privilege with the various states and judicial districts of the rest of the country. One of the privileges of a judicial district is to have persons who within its borders offend against the laws of the United States returned from any other district to itself for trial before the appropriate federal court sitting therein. That privilege is made practically available by section 1014, and by the act of 1871 the provisions of that section "have the same force and effect within the District of Columbia as elsewhere in the United States."

The writ is dismissed, and defendant remanded to await the action of the District Judge.