UNITED STATES v. CONKLIN et al.†

(Circuit Court of Appeals, Ninth Circuit. February 7, 1910.)

No. 1,751.

PUBLIC LANDS (§ 120*)—SUIT BY UNITED STATES FOR CANCELLATION OF PATENT—GROUNDS.

The United States cannot maintain a suit for the cancellation of a patent to public lands patented in lieu of other lands within a forest reservation conveyed to it in exchange, on the ground that such conveyance was procured from the owners by means of false representations made to them by a third party, where it is not shown that such owners were defrauded, that the United States did not acquire a good title to the reserve lands, or that it has sustained or will sustain any pecuniary loss or injury.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 120.*]

Appeal from the Circuit Court of the United States for the Northern District of California.

In Equity. Suit by the United States against Mollie Conklin, W. H. Metson, administrator with the will annexed of the estate of Patrick Reddy, deceased, Sybil Coleman, personally and as administratrix of the estate of Emily M. Reddy, deceased, B. B. Jackson, personally and as executor of the last will of Carolyn S. Reddy, deceased, John Reddy, and Katherine Mahar (née Reddy), C. L. Hovey, and Thomas B. Walker. Decree for defendants (169 Fed. 177), and complainant appeals. Affirmed.

Robert T. Devlin, U. S. Atty., and George Clark, Asst. U. S. Atty. N. E. Conklin and A. E. Bolton, for appellees.

Before GILBERT and MORROW, Circuit Judges, and HUNT, District Judge.

HUNT, District Judge. The United States brought this suit to annul and set aside a patent issued by the United States to Mollie Conklin and Emily M. Reddy, as executrix, and Edward A. Reddy, as executor of the last will and testament of Patrick Reddy, deceased, for the N. E. ¼ of the N. E. ¼ of section 8, township 39 North, and the W. ½ of the N. E. ¼ and the N. E. ¼ of the S. E. ¼ of section 18, township 40 North, of range 8 East, of the Mt. Diablo Meridian in California, containing 200 acres of land, upon the ground that the same had been obtained by fraud. Certain of the defendants demurred. The court sustained the demurrer, and decreed a dismissal of the bill. Complainant appeals.

The case as made by the complainant in its bill is substantially as follows: In August, 1900, Mollie Conklin was the owner of an undivided one-half interest, and Emily M. Reddy and Edward A. Reddy, as devisees under the last will and testament of Patrick Reddy, deceased, each owned, subject to administration of the estate of said deceased, an undivided quarter interest in some 9,000 acres of land, known as the "Monache Lands," situated in Tulare and Inyo counties, and within the Sierra Forest Reserve, in the state of California. An oral agreement for the sale of said lands to one John A. Benson was made at that time at the office of Messrs. Campbell, Metson & Campbell, attorneys, at San Francisco, Cal., between Benson and Mollie Conklin and Emily M. Reddy, the latter agreeing to sell to said Benson, and said Benson agreeing to purchase, within 90 days, the said lands at a price of $3.80 per acre. It was agreed that the lands might be purchased in parcels, and separate deeds for different parcels should be executed, and the law firm of Campbell, Metson & Campbell were to act for both Mollie Conklin and Emily M. Reddy in the preparation of said deeds, and in attending to their execution and delivery in accordance with the agreement as made between the parties. Deeds were to be executed by the owners to Benson, to be placed and held in escrow, and delivered to Benson upon the payment of the purchase price at the rate of $3.80 per acre, but no deeds were to be delivered until such payments were made. Mollie Conklin and Emily M. Reddy were both far advanced in years, and their mental faculties had become greatly impaired by reason of old age. They relied upon the members of the law firm of Campbell, Metson & Campbell, in whom they had reposed great confidence and trust, to see to it that the agreement of sale was carried out according to its terms and provisions. It is then alleged that subsequent to the making of said agreement Benson forwarded to Mollie Conklin and Emily M. Reddy, by an unknown person, but who was acting under the directions of said Benson, a large number of instruments for execution. He represented to said Mollie Conklin and Emily M. Reddy that he brought the instruments from the office of Campbell, Metson & Campbell, and that they were the deeds which were to be executed by them in pursuance of the agreement made in the month of August, 1900; that they had been prepared by said firm of attorneys; that said Mollie Conklin and Emily M. Reddy should sign them and return them by bearer to said attorneys, whom he claimed to represent in the matter as their agent. It is alleged, generally, that

these representations were false, and known, by the person making them and by said Benson, to be false, and were made for the purpose of taking advantage of said Mollie Conklin and Emily M. Reddy and of the trust and confidence reposed by them in their attorneys, and in order to cause to be violated the terms of their said agreement, and to procure from them their said lands, other than in accordance with their said agreement, and contrary to their will, wish and consent; that Mollie Conklin and Emily M. Reddy signed the instruments, without reading or examining the papers before doing so, relying upon said representations and believing them to be true, and believing that they were acting upon the advice of their attorneys, and that they were carrying out their agreement with Benson, and that they would not have signed them if said false representations had not been made. The instruments were in part deeds, purporting to convey and relinquish to the United States the "Monache Lands," in part lieu selections in blank, containing no description of the lands therein selected or of the land relinquished, and in part powers of attorney in blank, undated, and without the name of any attorney mentioned therein. One of said deeds was for a tract of 200 acres of the "Monache Lands," and one of said lieu selections was made use of as the means of procuring an equal amount of land, for which the patent, herein sought to be annulled, was afterwards issued, in exchange for the tract conveyed to the United States. After the execution of these instruments by Mollie Conklin and Emily M. Reddy in the manner stated, they were delivered and surrendered, by the person who had brought them, to Benson, and placed under his control, contrary to the will, wish, consent, or agreement of said Mollie Conklin and Emily M. Reddy, and without paying to them "any sum on account of his said receipt and control thereof." It is further alleged that Benson caused the deed to be delivered to the United States in pursuance of the laws, rules, and regulations of the Department of the Interior permitting the surrender of lands within forest reserves to the United States, and the selection of other lands in lieu thereof, together with an abstract of title; that the deed was never acknowledged by the grantors, but that the certificate of acknowledgment appearing thereon was falsely made and forged. A lieu selection of land of an equal amount as that described in the deed was thereupon filed and approved, and patent therefor issued on July 22, 1902, to said Mollie Conklin and Emily M. Reddy, as executrix, and Edward A. Reddy, as executor of the last will and testament of Patrick Reddy, deceased, and the patent delivered to said Benson and the defendant C. L. Hovey, all of which, it is alleged was done without the knowledge or consent of, and without any authority from, the said Mollie Conklin and Emily M. Reddy.

Prior to the approval of said lieu selection, C. L. Hovey, pretending to act under a power of attorney to him from Mollie Conklin and Emily M. Reddy, conveyed the lands described in the patent to the defendant Thomas B. Walker. It is alleged that the said Hovey had no authority to do so, and that the filling in of the blanks in the power of attorney under which the conveyance was made, was wholly unauthorized, and said Mollie Conklin and Emily M. Reddy never know-

ingly or intentionally executed said power of attorney, except under the supposition and belief that the same was a deed prepared by their attorneys in accordance with the agreement made in August, 1900; that Emily M. and Edward A. Reddy had no authority to convey any of the estate of Patrick Reddy, deceased, except by authority of the superior court of the state of California, which had never been obtained; that the name of Edward A. Reddy appears signed to all of said instruments, but complainant is not advised or informed as to the circumstances under which said Edward A. Reddy signed the same. It is alleged that the administration of the estate of Patrick Reddy had not been brought to a close, and that the expenses of administration have not been paid; that claims aggregating a large amount have been allowed and approved against said estate, which have not been paid, and that the lands conveyed to the United States are subject to the payment of such expenses, claims and debts against said estate; that the officers of the complainant, in approving said lieu selection and issuing said patent, acted inadvertently and through a mistake in assuming that the said deed from Mollie Conklin and Emily M. and Edward A. Reddy conveyed a complete title. It is alleged that Benson paid to Mollie Conklin certain sums of money aggregating between $2,000 and $3,000, which were accepted by her under the mistake and belief that the same were paid in pursuance and in execution of the agreement of August, 1900; that prior to the commencement of this suit, and upon discovery of the facts stated, she offered to return the moneys received by her to said Benson, upon a return to her of her interest in the lands by her surrendered to the United States, and is desirous and will, on return to her of said lands, return said money to Benson, or his assigns, or the person entitled thereto; that the United States desires that any title it may have to said lands may be, by decree, transferred and conveyed to said Mollie Conklin and Emily M. Reddy. Decree is prayed for the annulment of said patent, the canceling of the deed from Mollie Conklin and Emily M. Reddy to the United States, of the lieu selection, and the power of attorney from Mollie Conklin, Emily M., and Edward A. Reddy to C. L. Hovey, and for the cancellation of the deed executed to Thomas B. Walker by Hovey as the attorney in fact of Mollie Conklin and Emily M. and Edward A. Reddy.

The "Monache Lands," of which the tract conveyed to the United States was a part, were situated in the Sierra Forest Reserve, and the relinquishment of the 200 acres to the government, and the selection in lieu thereof of the lands described in the patent, were made pursuant to the act of Congress approved June 4, 1897, c. 2 (30 Stat. 36 [U. S. Comp. St. 1901, p. 1538]), which provides for an exchange of lands held under a bona fide claim, or patent, within the limits of a public forest reserve, for a tract of vacant public land open to settlement, not exceeding in area the tract covered by such claim or patent. The transaction resulted in no loss or damage to the government, and it was not deprived of any land, or any other thing of pecuniary value, with which it would not have willingly parted in exchange for the lands relinquished, except for the alleged fraud. Nor is it pretended that the United States did not secure, in exchange for the lands for which it

issued its patent to Mollie Conklin and Emily M. and Edward A. Reddy, all it asked for or expected to obtain, except that the title to the lands which it received was subject to the payment of administration expenses and debts owing from the estate of Patrick Reddy, deceased. But together with the deed there was delivered to the Department of the Interior an abstract of title to the lands relinquished to the United States, and it is not claimed that the abstract did not fully and correctly disclose the condition of the title, and show that the property belonged to an estate still in course of administration. Nor is it alleged that the estate was not possessed of sufficient other property to satisfy all claims and demands against it, or that by reason of the want of other assets sufficient to pay the estate's indebtedness, the lands relinquished to the government might become liable for the payment of such debts.

It must therefore be assumed that the Department of the Interior was advised at the time it approved the selection of the lieu lands that the tract of land offered to be surrendered in exchange therefor was the property of an estate still in process of administration, and chargeable with the payment of administration expenses and the debts of the estate. There are, it is true, some general allegations to the effect that representations were made by John A. Benson to the government officers in connection with the delivery of the deed and the making of the selection of the lieu lands, which were false and untrue, but these alleged misrepresentations were mere statements made by Benson as to his right and authority to deliver the deed and make the selection, which, it is insisted, he did not have, because the conveyance had not been made, and the deed had not been delivered to him by the owners of the property, in the manner provided by the terms of the agreement made in August, 1900, which required deeds to be made to John A. Benson and to be placed in escrow to insure the payment of the purchase price. The fraud complained of, and with which the transaction is said to be tainted, is the course pursued by Benson in obtaining the deed from the owners of the land, in that it departed from the agreement of August, 1900, in the particulars stated in the complainant's bill, and in making the lieu selection in the names of Mary Conklin and Emily M. and Edward A. Reddy without their authority, knowledge, or consent.

The object of the suit is not restitution to the government of property, or anything of pecuniary value, of which it has been wrongfully or fraudulently deprived; nor is its purpose to restore to the former owners any lands for which they have not been fully paid. What is really sought to be accomplished is the annulment of the patent and of the conveyance of the lands therein described to the defendant Walker, in order that the tract of 200 acres of the "Monache Lands" may be returned to the original owners, or, as stated by the government's counsel, if the selection made in lieu of the Monache lands "should stand on account of the fact that the United States acted without knowledge of the fraud practiced upon Mrs. Conklin and Mrs. Reddy, and without knowledge of the fraud that was being practiced upon it," the patent, and conveyance of the patented land to Walker,

should be set aside, "in order that the appellant may confer these lands upon the persons entitled thereto by virtue of the selection, if such selection is in fact legal"; and that, "if the selection should be allowed to stand, then the patent which was issued erroneously should be canceled, so that the proper transfer could be made by the federal government to Mrs. Conklin and Mrs. Reddy by a new patent." In short, the main object and purpose of this suit is to clear the way for a return to Mrs. Conklin and Mrs. Reddy of the lands sold by them to Benson and for which they have been fully paid, or, if that cannot be done, then to reinvest them, by the issuance of a new patent, with the title to the land once before patented to them, in exchange for the 200 acres of the Monache lands.

The government unquestionably may maintain an action for the annulment of its patents, and recover property of which it has been defrauded. But, like any other party coming into a court asking for redress, it must, in its complaint, state facts prima facie sufficient to entitle it to the relief demanded; · " * * * the respect due to a patent, the presumption that all the preceding steps required by law have been observed before its issue, the immense importance and necessity of the stability of titles depending upon these official instruments, demand that suits to set aside and annul them should be sustained only when the allegations on which this is attempted are clearly stated and fully sustained by proof." U. S. v. Stinson, 197 U. S. 200, 25 Sup. Ct. 426, 49 L. Ed. 724. If the title to the land involved in the suit was fairly acquired, it matters not what wrongs may have been done by the defendants in acquiring other lands. The inquiry is confined to the question whether the lands described in the patent, whose validity is attacked, were fraudulently obtained from the government. U. S. v. Budd, 144 U. S. 154, 12 Sup. Ct. 575, 36 L. Ed. 384. Mere moral delinquency, or abstract wrongs, do not furnish a basis sufficient to authorize the interposition of the courts. "Courts of equity do not, any more than courts of law, sit for the purpose of enforcing moral obligations or correcting unconscientious acts which are followed by no loss or injury." 1 Story, Eq. Jur. 203; U. S. v. Cent. Pac. R. Co. (C. C.) 26 Fed. 482. The specific facts, constituting the fraud, must be clearly shown, and alleged with certainty, and the particulars in which statements and representations made by the defendant are alleged to be false should be set forth. U. S. v. Atherton, 102 U. S. 372, 26 L. Ed. 213; 1 Street, Fed. Eq. Pr. pars. 196, 197; U. S. v. Martindale (D. C.) 146 Fed. 280.

In the case of U. S. v. San Jacinto Tin Co., 125 U. S. 273, 8 Sup. Ct. 850, 31 L. Ed. 747, the Supreme Court of the United States, speaking through Mr. Justice Miller, said:

"But we are of opinion that since the right of the government of the United States to institute such a suit depends upon the general principles which would authorize a private citizen to apply to a court of justice for relief against an instrument obtained from him by fraud or deceit, or any of those other practices which are admitted to justify a court in granting relief, the government must show that, like a private individual, it has such an interest in the relief sought as entitled it to move in the matter. If it be a question of property, a case must be made in which the court can afford a remedy in regard to that property; if it be a question of fraud which would render the

instrument void, the fraud must operate to the prejudice of the United States; and, if it is apparent that the suit is brought for the benefit of some third party, and that the United States has no pecuniary interest in the remedy sought, and is under no obligation to the party who will be benefited to sustain an action for his use, in short, if there does not appear any obligation on the part of the United States to the public, or to any individual, or any interest of its own, it can no more sustain such action than any private person could under similar circumstances.

"In all the decisions to which we have just referred it is either expressed or implied that this interest or duty of the United States must exist as the foundation of the right of action. Of course this interest must be made to appear in the progress of the proceedings, either by pleading or evidence; and if there is a want of it, and the fact is manifest that the suit has actually been brought for the benefit of some third person, and that no obligation to the general public exists which requires the United States to bring it, then the suit must fail."

Considering, therefore, the complainant's bill in the light of the principles thus laid down and established by the decisions in the cases referred to, it is apparent that a case has not been made entitling the complainant to the relief demanded. As to Edward A. Reddy, the former owner of an undivided one-quarter interest in the lands relinquished to the United States, there is nothing to show that the transaction was not carried through in a manner entirely satisfactory to him. With respect to Emily M. Reddy, while it is alleged that a deed for the relinquished lands was executed by, and procured from, her in a manner different from that provided by the agreement, no claim is made that she sustained any loss or injury in consequence thereof, or that she was dissatisfied, or that she was not at all times willing to retain the purchase price paid her, and permit the transaction as consummated to stand, notwithstanding the departure from the agreement of August, 1900. Mollie Conklin is said to be desirous of having the patent canceled, and the Monache lands restored to her, and offers to return, upon return to her of her interest in said lands, the money which she has received in payment therefor. As has been observed, no one was injured. The government secured the land which it wanted, and the owners of the Monache lands relinquished to the government received the full consideration to which they were entitled under their contract of sale. The alleged fraud consisted in procuring the conveyance to be made in a manner and by a method not provided for by the agreement; but this was not done with any intent or for the purpose of defrauding either the government or the former owners of the Monache lands. Assuming, without deciding, that the allegations made in that paragraph of the bill which pleads the ignorance of Mollie Conklin and Emily M. Reddy and their reliance upon Mr. Campbell and the law firm of Campbell, Metson & Campbell, sufficiently set forth the falseness of the statements and representations therein alleged to have been made by the person who brought the deed to Mrs. Conklin and Mrs. Reddy for execution, still they do not cover the allegations made in another paragraph of the bill, which set forth the representations made by the person who brought the deeds, and which were to the effect that the deeds had been prepared by Messrs. Campbell, Metson & Campbell in pursuance to the agreement of August, 1900. There is nothing, therefore, to show that the instruments presented to Mrs.

Conklin and Mrs. Reddy for execution had not in fact been prepared or approved by their attorneys before they were sent, and it is not alleged that they were prepared by any one else. Be that, however, as it may, and whether the representations made were false or true, it is not alleged that they were made with any intent to defraud, but, as stated in the bill, they were made "in order to cause to be violated the terms in their agreement, and in order to procure from them, the said Mollie Conklin and Emily M. Reddy, their said lands, other than in accordance with their said agreement," and in order to have Mrs. Conklin and Mrs. Reddy sign and return the instruments without reading or examining the same. Clearly, no court would be justified in decreeing the annulment of a United States patent upon such grounds.

It is contended, however, on the part of the government, that its right to the relief sought in this suit is established by the decision of the Supreme Court in the case of Hyde v. Shine, 199 U. S. 62, 25 Sup. Ct. 760, 50 L. Ed. 90. It requires no argument to show that the principle of that case is not applicable here. The question involved there was the sufficiency of an indictment charging the defendant with the offense of conspiring to defraud the government. It was insisted that, inasmuch as it did not appear from the facts stated in the indictment that the government had suffered any pecuniary loss or injury by reason of the acts charged, no offense was stated, and no prosecution could be maintained. In the consideration of the question so presented, the Supreme Court, speaking through Mr. Justice Brown, said:

"Whatever may be the rule in equity as to the necessity of proving an actual loss or damage to the plaintiff, we think a case is made out under this statute by proof of a conspiracy to defraud, and the commission of an overt act, notwithstanding the United States may have received a consideration for the lands, and suffered no pecuniary loss. MacLaren v. Cochran, 44 Minn. 255, 46 N. W. 408. The law punishes the false practices by which the lands were obtained, and the question whether the government stands in the position of a bona fide purchaser with respect to the school lands is not one which can be litigated in a criminal prosecution for a violation of law."

The court recognizes the rule which prevails in courts of equity, that injury or loss of a pecuniary nature should be shown to warrant the annulment or setting aside of muniments of title, but holds that such loss or injury need not be shown in a criminal prosecution for conspiracy to defraud the United States. And such is the rule in cases of that nature. Curley v. U. S. (C. C. A.), 130 Fed. 1, 64 C. C. A. 369; U. S. v. Stone (D. C.) 130 Fed. 392; U. S. v. Bradford (C. C.) 148 Fed. 413.

It is true, the court also said that under the circumstances disclosed in the case of Hyde v. Shine there could be no doubt that the United States might maintain a bill to cancel the patents to the exchanged lands procured by the fraudulent means employed in their procurement, notwithstanding the government's title to the forest reserve lands might be good. But in that case a double fraud had been perpetrated; a fraud upon the state of California in depriving it of its school lands by making purchases thereof in the names of fictitious persons, and persons not qualified under the law to acquire the same, in

violation of the public policy of the state; a fraud upon the United States by securing from it lands by means of forged and fictitious deeds of relinquishment, purporting to convey to the government lands to which title had not been legally acquired. No such condition exists in the case at bar, although it is contended that, inasmuch as the certificate of acknowledgment is alleged to have been falsely made and forged, this case is brought within the rule laid down in Hyde v. Shine. But here the deed was not a forgery. A conveyance of the property was effected without an acknowledgment of the execution of the deed. It may be, as was said by the learned judge of the lower court, "that if the government had known that the deed was not acknowledged, it would not have issued the patent," but, as it does not appear that the government was in any manner injured, we are unable to see how it could be harmed by reason of the failure on the part of the grantors to acknowledge the execution of the deed.

We find no ground upon which this suit can be sustained, and conclude, therefore, that the decree of the circuit court should be affirmed. So ordered.