In re CERTAIN STOCKHOLDERS OF THE CALIFORNIA NAT. BANK OF SAN DIEGO.

(District Court, S. D. California. November 28, 1892.)

NATIONAL BANKS—RECEIVER—SHAREHOLDERS—COMPOUNDING STATUTORY LIABILITY.

A federal court will not, even if it has the power under Rev. St. § 5234, grant an order authorizing a receiver of a national bank to compound the statutory liability of certain stockholders by accepting payment of a gross sum, less than is due, in satisfaction and discharge thereof, although more money would thus be realized than by proceedings to collect the same in the usual way, when it appears probable that such stockholders have fraudulently conveyed their property to avoid their legal obligations as stockholders, or to shield themselves from injury and exposure by litigation.

In Equity.

M. T. Allen, for petitioner.

ROSS, District Judge. This is an application for an order of the court authorizing the receiver of the California National Bank of San Diego to compound the statutory liability of certain of its stockholders. The petition for the order sets forth the insolvency of the bank, the appointment of the receiver by the comptroller of the currency, the qualification of the receiver, and his entry upon the duties of his office. It further sets forth that, at the time of the suspension of the bank, 781 shares of the capital stock of the association were owned by certain named persons, in certain stated shares, residing in the states of Maryland and Pennsylvania; that subsequently, it being made to appear to the comptroller of the currency that the assets of the bank were not sufficient to pay its liabilities, the comptroller, on the 5th day of May, 1892, levied an assessment of $100 per share upon each and every share of the stock of the bank, and directed the petitioning receiver to take the necessary proceedings to enforce to that extent the individual liability of the shareholders. The petitioner states, upon information and belief, that many of the owners of the 781 shares are insolvent; that not more than 40 per cent. of the amount of the assessment against those shares could be collected by process of law, and that such collection would be at great cost and expense; that among other information furnished the petitioning receiver is that contained in the petition to the comptroller, signed by H. H. Haines, David M. Taylor, and S. R. Dickey, (holders of a portion of the 781 shares of stock,) a copy of which is attached to the petition of the

receiver; that the holders of the 781 shares, being 41 persons in number, have proposed to the receiver to pay a gross sum of $30,000 in satisfaction and discharge of their liability as such shareholders; that the proposition to accept that sum of money, and compound and settle the liability of the stockholders, has been submitted to the comptroller of the currency, who has directed the receiver to petition the court for an order authorizing the settlement, a copy of which instructions is annexed to the petition; that the comptroller, however, required that all claims which any of the holders of the 781 shares may have against the trust, whether proven or unproven, should be assigned to the receiver for the benefit of the trust. The petitioner further represents that, in his opinion, it is for the best interests of the trust that the offer of $30,000 in cash from the holders of the 781 shares of stock, in addition to the assignment and transfer of all their claims against the trust, be accepted in full of their statutory liability.

The petition of Haines, Taylor, and Dickey, addressed to the comptroller of the currency, represented, among other things, that the 781 shares of stock of the insolvent association are held by persons residing in the immediate vicinity of their residence; that of the 781 shares a large number are held by persons who are wholly insolvent, others by persons of very limited means, from whom nothing could be collected by execution, and others by persons who would resist the assessment by litigation and otherwise; that they (Haines, Taylor, and Dickey) have carefully computed the amount which could probably be realized by the trust through adverse proceedings from these 781 shares, the holders of all of which are personally known to them, as well as their responsibility, and in their judgment it would be less than 20 per cent.; that they (Haines, Taylor, and Dickey) have interviewed the holders of the 781 shares with a view of inducing them to join with the petitioners (Haines, Taylor, and Dickey) in making an offer of compromise, and through their efforts they have induced the insolvent stockholders to consent to make partial payment, which, added to the sum to be contributed by the remaining stockholders, will make a sum largely in excess of any sum that could be collected from them all by adverse proceedings; that the acceptance of the offer of compromise would result in immediate payment to the trust of a large sum of money, and would be a saving of time, trouble, and expense of litigation, which in some cases might be determined in favor of the stockholders; that this litigation would result in long delay, and, even if successful, in the mean time those who are now thought to be solvent may become insolvent, or otherwise unable to pay any judgment that ultimately may be recovered against them; that the petitioners (Haines, Taylor, and Dickey) are authorized, on behalf of the 41 stockholders of the 781 shares whom they represent, to pay the sum of $30,000 in cash; and they ask that their proposition be accepted.

In his letter of instructions to the receiver, the comptroller said:

"The three gentlemen who make the proposition were largely instrumental in placing the stock of the bank with the holders in their immediate vicinity, and for that reason have some interest n shielding them from unnecessary loss or vexations through litigation. It is perfectly apparent, however, that the men who make this proposition of settlement on behalf of the others, and who would

at once advance the money if accepted, do so for the purpose of saving themselves from the payment of an assessment in full. These three men claim, however, that the assessment could not be collected from them by adverse proceedings. It is a question of the employment by the receiver of these three men as a collection agency, and whether the trust would realize more funds thereby than in the regular course of litigation. It is reported to this office, on what seems to be good authority, that many of these stockholders have placed their property out of their hands with a view to successfully resisting any proceedings which may be commenced to enforce the collection of the amount assessed against them. It is claimed, also, that many of these stockholders are wholly insolvent, or at least execution proof; being married women, clerks, and so forth. The stockholders included in this offer reside only a few hours' distance from Washington, and have been here in person, many of them,—and by representatives, all of them,—first, with a view to restoring the bank; next, with a view to voluntary liquidation; and now, with a view to compromising their claims. This bureau has employed such means of investigation as are at its hands to ascertain the general character of these stockholders with respect to solvency. Some of them, notably the three who make this proposition, according to their reputation among their neighbors, are perfectly solvent, and the amount claimed against them could be collected by law. They have submitted, however, a statement of their financial condition and obligations, and insist that the claim against them cannot be collected. One of them is president of a bank, the others are in responsible positions, and they want to save themselves from the exposure which would follow litigation. These creditors being so much nearer to this office than to the receiver, I deemed it just to enter upon an investigation, somewhat with the view to advising you more explicitly as to your duty in the premises. It is impossible to reach any satisfactory conclusion as to the collectibility of these claims. That could probably only be determined by suits and execution. I am, however, satisfied that the acceptance of this $30,000 in cash at once will net more money to the trust than could be realized through the regular course of collection by means of suit and execution, and in that view of the case its acceptance may be wise. This proposition is made upon a basis of forty per cent. approximately; the parties making the offer (against whom the principal liability exists) making up for those who are unable to pay anything, and the deficiency of those who are unable to pay the full forty per cent., and by so doing hope to save themselves from paying one hundred per cent., or from injury and exposure by litigation. They insist, however, that any suits commenced for the purpose of enforcing the collections against them will be resisted, and I have no doubt they will. That is the situation of the matter, as fully as I can ascertain the same. I therefore authorize you to submit the proposition to the court for its consideration. It would seem to me that each individual claim should be treated on its merits; and yet I am of the opinion, as stated, the acceptance of this offer will yield the trust more money than would be realized by proceedings to collect the same in the usual way. These people have united to effect a compromise, and have also united to resist any adverse proceedings for collection. It seems to me, therefore, that the question is one which may be fairly presented to the court for its consideration and decision. You will therefore cause to be prepared a petition to the court for such purpose, accompanied by this letter, or a copy thereof.

"P. S. As a part of the proposition inclosed, it is understood that all amounts due shareholders included in the list as creditors shall be forfeited; or, if claims have been proved, your certificate shall be assigned to you for the benefit of your trust."

Assuming that the court is authorized to grant the order asked for, it is unhesitatingly refused. To sanction proceedings by which a stockholder in a national banking association fraudulently puts away his property for the purpose of avoiding his just and legal obligations as such stockholder, and is then permitted to compromise his liability by the payment of a less sum than is due, is to place a premium upon fraud. With such conduct there should be no compromise. Laws are made to be observed and enforced, and every one should be made to know that, in respect to every contract made pursuant to their pro-

visions, the government will accord and exact fair dealing and the utmost good faith. It is far better that the entire amount of the obligations of the stockholders in question should be lost to the trust fund than that the slightest judicial countenance should be given the proposed proceedings. The liability of the stockholders of the insolvent bank is several and not joint. Kennedy v. Gibson, 8 Wall. 505. And there is no reason why the property of every one who has conveyed or may convey it for the fraudulent purpose of avoiding his just and legal obligations arising under the law should not be followed, and every reason why it should be.

What has been said is sufficient to dispose of the petition. It is, however, to say the least, extremely doubtful whether the court has the power to authorize the compounding of the statutory liability of a stockholder in a national bank. The provision of the statute upon the subject is found in section 5234 of the Revised Statutes. By that section it is declared:

"Such receiver, under the direction of the comptroller, shall take possession of the books, records, and assets of every description of such association, collect all debts due and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association on such terms as the court shall direct, and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders."

It is by no means clear that the statutory liability of the stockholders is a debt, within the meaning of the clause authorizing the court to sanction the compounding of all bad or doubtful debts. In the view I have taken of the case, however, it is not necessary to decide this point. Petition denied.