GEORGE E. WOOD, Respondent, *v.* JOHN L. DUDLEY, JR., Appellant.

First Department, May 29, 1919.

Fraud — action for false and fraudulent representations — complaint — essential elements of action — remedies of party induced to execute contract by false and fraudulent representations — measure of damages — erroneous instructions to jury as to damages.

Complaint *held* to state a cause of action to recover damages for false and fraudulent representations.

The essential elements of such an action are representation, falsity, scienter, deception and injury.

A contract induced by false and fraudulent representations is not void, but voidable. On discovery of the fraud the defrauded party has the election of several remedies: (1) He may rescind the contract by promptly tendering back all that he has received under it. He may then bring an action at law upon the rescission to recover back what he has paid or (2) defend an action brought against him on the contract, setting forth the fraud and rescission as a defense. (3) He may bring an action in equity for rescission,

the tender may be made in the complaint and must be kept good at the trial, and the court will adjust the relief as equity requires upon the facts established.    (4) He may affirm the. contract and sue for his damages. (5) If sued upon the contract, he may counterclaim his damages.

A contract may be rescinded for a mistake or innocent misrepresentation of a material fact.   But an action for damages will only lie where the representation upon which it is based is shown not only to have been false and material, or not knowing whether it was true or false and not caring what the fact might be, it was made recklessly, paying no heed to the injury which might ensue.

The measure of damages, where the defrauded party affirms the contract, according to the general rule, is the difference in value of the article received as it is, and what it fraudulently was represented to be.

In an action to recover damages for false and fraudulent representations by which the plaintiff was induced to enter into an agreement and transfer his insurance business and agencies, *held*, that a judgment in favor of the plaintiff should be reversed and a new trial granted, because of the failure of the court to properly instruct the jury as to the measure of damages.

APPEAL by the defendant, John L. Dudley, Jr., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 23d day of November, 1917, upon the verdict of a jury, and also from an order entered in said clerk's office on the 21st day of December, 1917, denying defendant's motion for a new trial made upon the minutes.

*Sumner B. Stiles* of counsel [*William F. S. Hart,* attorney], for the appellant.

*W. Benton Crisp* of counsel [*Cyril F. Dos Passos* with him on the brief; *Crisp, Randall & Crisp,* attorneys], for the respondent.

PAGE, J.:

The complaint states a cause of action to recover damages for false and fraudulent representations, containing the essential elements of such an action, representation, falsity, scienter, deception and injury. (*Brackett* v. *Griswold,* 112 N. Y. 454, 467.)   The answer admits the making of the agreement but denies the other material allegations of the complaint.   The facts that the jury were justified in finding from the evidence are as follows:   The plaintiff had been engaged in the business of fire insurance in the city of New York for twenty-five years; that on and before the 1st  day

of February, 1914, he was acting as agent of certain fire insurance companies, under the trade name of Wood Brothers, being authorized to issue policies in said companies on suburban properties. He also had an interest in a holding company, which owned the stock in a corporation that conducted a fire insurance brokerage business. The defendant was the president of the John L. Dudley, Jr., Company, which was in a similar insurance business and which owned the capital stock of the Dudley Company, Ltd., an English corporation, also engaged in the insurance business in London, Eng. In December, 1913, a merger of the plaintiff's business with that of the John L. Dudley, Jr., Company was proposed and negotiations entered into which resulted in an agreement whereby the plaintiff transferred all his agency business with the consent of the companies he represented to the John L. Dudley, Jr., Company. That company agreed to organize a new corporation under the laws of New York under the name of the Suburban Agency Company with a capital stock of $1,000, to have a board of five directors, two of whom were to be chosen by the plaintiff, two by the John L. Dudley, Jr., Company and the fifth to be chosen by the others; one-half of the capital stock was to be issued to plaintiff in consideration of the plaintiff's turning over to said company all the records, maps and other documents relating to the suburban business formerly conducted by him, and one-half to the John L. Dudley, Jr., Company, the John L. Dudley, Jr., Company to enter into an agreement with the Suburban Company to conduct for and on behalf of that corporation the agency business in the suburban territories in the companies formerly represented by the plaintiff and the John L. Dudley, Jr., Company, and after the payment of the expenses of the said business, which included a proper *pro rata* share of the office and other expenses of the John L. Dudley, Jr., Company, to turn over and account to the Suburban Company the net profits arising therefrom, the contract containing certain other details not necessary to state.

The complaint alleged that for the purpose of inducing the plaintiff to enter into this contract the defendant represented that the John L. Dudley, Jr., Company was in all respects solvent; that it had ample assets to meet and pay its obligations and its capital stock was worth par and that it had a

brokerage business which amounted to at least $50,000 per annum in premiums, and also that the English corporation of Dudley & Company, Ltd., was in all respects solvent and was at that time earning a profit of from $20,000 to $25,000 a year. The plaintiff believed the said representations to be true, and relying upon them and in consideration thereof entered into the agreement and transferred his business and the agencies to the John L. Dudley, Jr., Company and otherwise performed the said agreement; that the John L. Dudley, Jr., Company conducted the business transferred to it by plaintiff until November 9, 1914, and during said time made large gains and profits therefrom; that all of the said representations by the defendant were false and untrue, and were made with the intent of defrauding and cheating the plaintiff out of his business.

Although the appellant's counsel has given a full analysis of the testimony and calls attention to what he deems to be contradictions, he does not contend that the verdict was against the weight of the evidence. He predicates his appeal upon exceptions to the charge as to the measure of damages, and to the admission of evidence which in many instances involved the same question of law, as the evidence would have been admissible upon one measure of damage and immaterial if a different measure was to be applied. The court charged generally: " If you are satisfied that the plaintiff has proved his case, as I have briefly described it to you, the plaintiff would be entitled to indemnity for the actual loss sustained as the direct result of the wrong complained of," and specifically as to four items of alleged damages which will be considered later.

The respondent's counsel states that this charge is in the exact language of the case of *Ochs* v. *Woods* (221 N. Y. 335, 340), and that prior to that case there had been a conflict of decisions as to the rule of damages as typified by *Krumm* v. *Beach* (96 N. Y. 398) and *Smith* v. *Bolles* (132 U. S. 125), but that as the Court of Appeals in the *Ochs* case cites both of these cases as authorities for the proposition above stated, he argues that the rule stated in *Smith* v. *Bolles* has been adopted in this State, and, therefore, the plaintiff may elect under which rule he will claim his recovery. The learned

counsel has entirely misconceived the effect of the citation of the case of *Smith* v. *Bolles.* In order to make the matter plain and that this misconception shall not cause further uncertainty in the application of the rule of damages in cases of this character a restatement of some well-established principles seems desirable.

A contract induced by false and fraudulent representations is not void, but voidable. On discovery of the fraud the defrauded party has the election of several remedies: (1) He may rescind the contract by promptly tendering back all that he has received under it. He may then bring an action at law upon the rescission to recover back what he has paid, or (2) defend an action brought against him on the contract, setting forth the fraud and rescission as a defense. (3) He may bring an action in equity for rescission, the tender may be made in the complaint and must be kept good at the trial, and the court will adjust the relief as equity requires upon the facts established. (*Davis* v. *Gifford,* 182 App. Div. 99, 101.) These remedies are based upon a disaffirmance of the contract, in which the party rescinding or desiring to rescind in effect says, you have induced me to enter into this contract by fraud. I offer you what I received. Give me back that which you received, or if that be impossible pay me its value. (4) He may affirm the contract and sue for his damages. (5) If sued upon the contract, he may counterclaim his damages. There is this important distinction to be borne in mind. A contract may be rescinded for a mistake or innocent misrepresentation of a material fact. But an action for damage will only lie where the representation upon which it is based is shown not only to have been false and material, but that the defendant when he made it knew that it was false, or not knowing whether it was true or false and not caring what the fact might be, it was made recklessly, paying no heed to the injury which might ensue. (*Kountze* v. *Kennedy,* 147 N. Y. 124, 129.)

The measure of damages, where the defrauded party affirms the contract (4-5 *supra*), according to the general rule, is the difference in value of that received as it is, and what it fraudulently was represented to be. This is the settled rule in this State. (*Whitney* v. *Allaire,* 1 N. Y. 305, 312;

*Hubbell* v. *Meigs*, 50 id. 480, 491; *Miller* v. *Barber*, 66 id. 558, 564, 568; *Grissler* v. *Powers*, 81 id. 57, 61; *Krumm* v. *Beach*, 96 id. 398, 405–407; *Vail* v. *Reynolds*, 118 id. 297, 301, 302; *Yeomans* v. *Bell*, 151 id. 230, 234.) This rule is recognized and applied in the following States: Arkansas, California, Colorado, Florida, Georgia, Illinois, Indiana, Iowa, Kentucky, Massachusetts, Missouri, Nebraska, New Hampshire, North Carolina, North Dakota, Oklahoma, Ohio, South Dakota, Tennessee, Texas, Utah, Vermont and Wisconsin. (See cases collated in 38 L. R. A. [N. S.] 465; 2 Sedg. Dam. [9th ed.] 1622.) The United States Supreme Court held in *Smith* v. *Bolles* (*supra*) that a charge to the jury that stated the measure of damages in accordance with the above rule was error and reversed the judgment, saying: " The measure of damages was not the difference between the contract price and the reasonable market value if the property had been as represented to be, even if the stock had been worth the price paid for it; nor if the stock were worthless, could the plaintiff have recovered the value it would have had if the property had been equal to the representations. What the plaintiff might have gained is not the question, but what he had lost by being deceived into the purchase. The suit was not brought for breach of contract. The gist of the action was that the plaintiff was fraudulently induced by the defendant to purchase stock upon the faith of certain false and fraudulent representations, and so as to the other persons on whose claims the plaintiff sought to recover. If the jury believed from the evidence that the defendant was guilty of the fraudulent and false representations alleged, and that the purchase of stock had been made in reliance thereon, then the defendant was liable to respond in such damages as naturally and proximately resulted from the fraud. He was bound to make good the loss sustained, such as the moneys the plaintiff had paid out and interest, and any other outlay legitimately attributable to defendant's fraudulent conduct; but this liability did not include the expected fruits of an unrealized speculation. The reasonable market value, if the property had been as represented, afforded, therefore, no proper element of recovery."

First Department, May, 1919.          [Vol. 188.

" Nor had the contract price the bearing given to it by the court.   What the plaintiff paid for the stock was properly put in evidence, not as the basis of the application of the rule in relation to the difference between the contract price and the market or actual value, but as establishing the loss he had sustained in that particular.   If the stock had a value in fact, that would necessarily be applied in reduction of the damages. ' The damage to be recovered must always be the natural and proximate consequence of the act complained of,' says Mr. Greenleaf, Vol. 2, § 256; and ' the test is,' adds Chief Justice BEASLEY in *Crater v. Binninger*, 33 N. J. Law (4 Vroom), 513, 518, ' that those results are proximate which the wrongdoer from his position must have contemplated as the probable consequence of his fraud or breach of contract.'   In that case, the plaintiff had been induced by the deceit of the defendant to enter into an oil speculation, and the defendant was held responsible for the moneys put into the scheme by the plaintiff in the ordinary course of the business, which moneys were lost, less the value of the interest which the plaintiff retained in the property held by those associated in the speculation."

The rule of damages prescribed in that case, tersely stated, is, that the defrauded party is only entitled to recover the difference between the value of that with which he parted and the actual value of that which he received.   This rule has been adopted by the following States: Maryland, Minnesota, New Jersey, Oregon, Pennsylvania and Washington.

The great weight of authority in this country is, therefore, in favor of the general rule which is the law in this State, and to my mind reason and justice sustain it.

The reason generally given in support of what we will term the Supreme Court rule is that the tort does not consist in the falseness of the representation, but in making the statement fraudulently, the result of the tort being not to change the value of the bargain but to cause the plaintiff to part with his property.   Therefore, the direct result of the tort is the loss which the plaintiff sustained in paying a certain price for property which was worth less than he paid.   His damage, therefore, is the difference in the value of that which he received and what he paid for it; that this loss is what the wrongdoer must have contemplated as the probable

consequence of his fraud. In this, it seems to me, the transaction is considered from the wrong viewpoint, that of the wrongdoer. The court should not be concerned with the contemplation of the wrongdoer. It may be that his position is this, that by making statements, known to me to be false, I can induce the purchaser to believe that he is buying something of greater value than the price he is paying. If he discovers the fraud all that I will be obliged to pay back will be the difference between what I have received and the actual value of what I have sold. I, therefore, stand to lose nothing, for I will in any event get full value for that which I have sold, and may gain the excess in price which I have fraudulently obtained. Furthermore, this is, in practical result, applying the same rule to damages for the fraud as would be applied in rescission, which may not be predicated upon fraud. In rescission the vendor receives back that which he sold, and is required to return that which he had received. In the one case he retains the value of that which he sold and in the other the thing itself. As the thing is supposed to equal its value, his loss in both cases is but the difference between the value of that which he sold and what he received. The inducement to the purchaser may not have been the thing itself, as it really was, but the value of the thing as it was represented to be; by this rule he is deprived of that which he contemplated he was getting, and is required to pay for that which he did not intend to buy.

Furthermore, this rule is said to be the logical outcome of the historical development of the various forms of action.

The argument runs thus: At common law there were three different actions that could have been invoked: (1) Assumpsit on the implied warranty. (2) Trespass on the case, in the nature of deceit for breach of warranty. (3) Trespass on the case for the deceit. All three had a common origin in trespass on the case. In the first two it was not necessary to allege scienter, while in the last scienter is the important element. In time, a mere representation, which in fact was untrue, gave rise to an action for breach of warranty and the action might be brought either in assumpsit or in trespass on the case, upon the warranty, and the measure of damages was the same. But in an action for deceit, the gist of which was the

fraud, the knowingly making a false representation with intent to deceive, the measure of damage was different. Therefore, if the action was brought on the implied warranty the injured party recovered the damage that he suffered because the thing was not of the value or kind represented, while if he brought his action in deceit he was only entitled to recover the actual damage caused by the fraud, that is, the difference in the value of what he received and that with which he parted. If the representation was fraudulently made he could nevertheless sue in trespass on the case, in the deceit for breach of warranty. Although if the representation was not fraudulently made he could not bring his action for deceit. The form of the action determined the relief to which the suitor was entitled.

However persuasive this argument may appear in those States which still have the common-law pleading it has no force in this State, where the distinction between forms of action has been abolished and the relief is granted in accordance with the facts alleged and proved.

The general rule asks not what was the expectation of the person perpetrating the fraud, but what was the expectation of the defrauded party. He bought a certain thing which according to the representation of the other party was of a certain value. He gets something different. He is, therefore, entitled to the value of the thing he bought, which was the thing as it was represented to be, and his measure of damage is the difference between the actual value of that which he received and what would have been the value had it in fact been as it was represented to be. If he does not want what he has received he has the option to rescind. But if he retains it he can recover the benefit of his bargain and the wrongdoer does not escape harmless, but he is required to make good his fraudulent representation by paying the difference in value of that which he delivered and what he represented he would sell. The reasons for this rule have been so clearly stated in the Court of Appeals cases above cited, especially in *Krumm* v. *Beach* (*supra*), that no further discussion of the subject is necessary.

In *Ochs* v. *Woods* (221 N. Y. 335) the plaintiff was induced to accept, in place of the defendant, a corporation as the

party who would pay him a commission for obtaining a tenant for a theatre building, upon the representation that the corporation owned the building and was entirely solvent, which was false, as the corporation was insolvent and known so to be by the defendant. The court said: " Through the deceit, plaintiff abandoned his legal right for its nearly valueless substitute. Deceit and injury concurred. The basic principle underlying all rules for the measurement of damages for deceit is indemnity for the actual loss sustained as the direct result of the wrong. The question is what was the value of that with which plaintiff parted and what was the value of that which he received? (*Urtz* v. *New York Central & Hudson River R. R. Co.*, 202 N. Y. 170; *Krumm* v. *Beach,* 96 N. Y. 398; *Smith* v. *Bolles,* 132 U. S. 125.) "

It is clear that *in that case* the plaintiff was not induced to enter into a contract whereby it was represented that he was getting something of a larger value than that which he was giving to the defendant. He released the defendant from his claim to the commission, not on the representation that he by so doing would obtain a larger commission, but that he would receive the same commission. The fraud was in the defendant's having induced the plaintiff to release him and accept an insolvent corporation, whereby he lost the commission. It was a plain case of a deprivation of a right of action by deceit. There was no element of warranty in the case, hence the measure of damage would be the amount of the commission of which he was deprived less anything he may have received from the corporation. It clearly was not intended to change the settled measure of damage as declared in *Krumm* v. *Beach* (*supra*). The statement is entirely correct as to the basic principle underlying all rules for the measurement of damages for deceit. The cases of *Krumm* v. *Beach* and *Smith* v. *Bolles* both recognize this rule as the basic principle. They differ in the application of that principle to the case of a representation tending to induce the plaintiff to purchase something of a greater value than the price he is paying. In the *Krumm* case the defendant is held to his representation and must make good the difference between the value as represented and as the value actually was, while

in the *Smith* case the representation as to value does not enter into the measure of damage, the question being merely was the thing received of less value than the thing given. In other words, in the one case the representation is one element of damage as well as of the fraud, and in the other it is only an element of the fraud, and not of the damage.

In the instant case the learned justice laid down the basic principle and then charged specifically certain items of damage at the request of plaintiff's counsel and submitted the written memorandum of these items to the jury. An error of $100 in subtraction in the first item was corrected in the charge but not in the memorandum, and is carried into the verdict as the verdict was for the total amount shown to be due by the memorandum, which was as follows:

1. Brokerage fees which he would
   have received on a business of
   $50,000 at five per cent......... $2,500 00
   Less amount received........... 300 00
   ────────
   $2,300 00

2. The amount earned on the business
   of the companies turned over by
   plaintiff to the John L. Dudley,
   Jr., Company.................. $8,534 70
   Less *pro rata* share of expenses... 3,300 00
   ────────
   5,234 70

3. Amount expended by plaintiff to recover two
   of the five agencies turned over to the John L.
   Dudley, Jr., Company,.................... 3,991 84

4. Note of the plaintiff to order of Atlas Insur-
   ance Company, which was assumed and pay-
   ment guaranteed by the John L. Dudley, Jr.,
   Company and the Suburban Agency Com-
   pany, but which they failed to pay........ 6,552 19
                                            ────────
   Total............................. $18,078 73

The difficulty with the specific charge that if the jury found that the plaintiff had sustained the burden of proof he was entitled to recover these specific items, is that there was

no consistent rule of damage charged nor any applied to the items. The first would have been appropriate to the rule that the plaintiff was entitled to recover the difference between the value of the business as represented and as it was. The second allows the plaintiff to recover the earnings of his business, which went to the John L. Dudley, Jr., Company, thus applying the rule that would have obtained upon a rescission. The third, if consistent with any theory, would be that of rescission, while as to the fourth there being nothing said about the assumption of this note in the agreement between the John L. Dudley, Jr., Company and the plaintiff, nor was the same mentioned in any of the negotiations between them, it was a part of the agreement thereafter made by the John L. Dudley, Jr., Company with the Suburban Agency Company, which if enforcible at all by plaintiff, would be against those companies upon that agreement.

The respondent claims that the judgment is much less favorable to him than it would have been had the correct rule of damages been laid down for the guidance of the jury, and that if he is willing to forego the advantage, the appellant has no cause to complain. The value of the business that he turned over upon the merger does not appear and we, therefore, have no means of arriving at a conclusion on that point. The appellant is here seeking a reversal, and demanding that the case be submitted upon the correct theory. This is his right. Such errors as were committed in the admission of evidence arose from the wrong theory of damages having been invoked and need no further discussion.

The judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., LAUGHLIN, DOWLING and MERRELL, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.