COMMERCIAL CREDIT CORPORATION, Appellant, *v.* THIRD & LAFAYETTE STS. GARAGE, INC., Respondent.*

Fourth Department, May 8, 1929.

* Revg. 131 Misc. 786.

*Buecking & Sengbusch [William C. Sengbusch* of counsel], for the appellant.

*Ernest Cawcroft,* for the respondent.

EDGCOMB, J.   A person induced by fraudulent representations to purchase property has one of three remedies:

(1) He may, upon discovery of the fraud, rescind the contract, and sue in an action at law to recover the consideration parted with.

(2) He may bring an action in equity to rescind the agreement, and in such an action will be accorded full relief.

(3) He may retain that which he has received, and bring an action at law, based upon the other party's fraud, to recover the amount of damages sustained.   (*Vail* v. *Reynolds,* 118 N. Y. 297; *Weigel* v. *Cook,* 237 id. 136; *Brennan* v. *National Eq. Inv. Co.,* 247 id. 486; *Wood* v. *Dudley,* 188 App. Div. 136; *Wood* v. *Hill, No. 2,* 214 id. 417.)

Asserting that it was influenced to purchase a note given by Susan and Walter L. Chamberlain to the defendant for the balance due on the purchase of a 1926 Hudson brougham, and a conditional sales contract covering said car, by reason of certain deceitful and untruthful representations made by the defendant, the plaintiff elected to take advantage of the first remedy above mentioned; it tendered back to the defendant the original note and conditional sales contract, and demanded a return of the $1,035.63 paid for the purchase price thereof.   Defendant refused to accede to the demand, and plaintiff brought this action to recover said sum.

It is important throughout this discussion to bear in mind the nature of this action, and to remember that this is not a suit to recover damages for deceit, but one to regain the consideration paid, based upon a rescission of the contract.

The facts relating to this transaction are not disputed: most of them are conceded.

The automobile in question was sold by the defendant to the Chamberlains on June 4, 1926, on a conditional sales contract. The purchase price was $1,685.56.   The sum of $517.82 was taken care of in a manner which will be described hereafter in detail. The purchasers gave their note for $1,167.74, the balance of the

purchase price, payable in twelve equal monthly installments, commencing one month from the date of the sale. The defendant sold, assigned, transferred and delivered to the plaintiff this conditional sales contract, and the motor vehicle referred to therein, and the note of $1,167.74.

The assignment contained the following provision: " Undersigned [defendant] warrants that the down payment made by the purchaser as stated in the contract was in cash and not its equivalent, unless otherwise mentioned in the contract."

The contract of sale specified the method of payment of the purchase price, as follows: " Cash on or before delivery $517.82; allowance on trade in — none; total down payment $517.82; balance $1,167.74 (for which a note payable in 12 equal monthly installments, commencing one month from date hereof, has been given by purchaser to seller as evidence, but not as payment); total time price $1,685.56."

The fraud complained of here is the alleged falsity of the statement in the conditional sales contract that the down payment of $517.82 had been paid in cash.

No money or currency passed between buyer and seller at the time the car was purchased. The deal was financed by two notes, signed by the Chamberlains, the one above mentioned for $1,167.74, and another for $517.82, payable on demand, and secured by an assignment of the makers' interest in the estate of Henry L. Chamberlain, deceased. This latter obligation was still in existence at the time plaintiff rescinded the contract. It was finally paid more than a year after its date, and six months after the commencement of this action.

The referee has found that $517.82 was actually paid in cash within the meaning of that word as used in the assignment, and that the defendant did not, therefore, make a misstatement of fact, and was not guilty of any misrepresentation or fraud.

With this conclusion I am unable to agree. To my mind, the word " cash " is synonymous with the word " money." Webster's International Dictionary gives as synonyms of " cash," the words " money," " coin," " specie," " currency."

The Century Dictionary defines " cash " as, " money; primarily ready money; money on hand or at command."

In Bouvier's Law Dictionary (Rawle's 3d rev.) the word is defined as " That which circulates as money, including bank bills, but not mere bills receivable."

In *Steward* v. *Scudder* (24 N. J. L. 96) the court uses this language (at p. 101): " A sale for cash is a sale for the money in hand, at least such is the general meaning of the term."

In *Pierce* v. *Bryant* (5 Allen [Mass.], 91) a provision of the statute requiring cash payment of capital by a special partner in order to exonerate him from liability for the debts of the firm, was held not to have been complied with by the delivery to the firm of promissory notes, although they were received and treated as cash.

In *Van Ingen* v. *Whitman* (62 N. Y. 513) it was held that the transfer by a special partner of his interest in the assets of his old firm to his new firm could not be considered as a cash payment under the statute requiring the contribution of a special partner to a limited partnership to be made in cash.

In *Durant* v. *Abendroth* (69 N. Y. 148) the statute relating to limited partnership was again before the court. The requisite certificate and affidavit for the formation of such a partnership, which were dated and filed December 23, 1870, stated that the sum contributed by the special partners had actually been paid in cash. The partnership was to commence January 1, 1871. The contribution made by the special partner was in the form of a check dated December 31, 1870. It was actually paid January 2, 1871. It was held that the statements in the certificate and affidavit were untrue, and that the special partner was liable for the debts of the firm as a general partner.

In *Gunter* v. *Sanchez* (1 Cal. 45) it was said that gold dust was not cash, within the meaning of a contract calling for the payment of cash.

As indicating the intent of the parties by the use of the word " cash," attention is called to the words following: " and not its equivalent, unless otherwise mentioned in the contract." Nothing could take the place of cash, although it might be a perfectly good substitute, unless it was specified in the agreement. It is common knowledge that an allowance is frequently made for an old car on the purchase of a new one. Here the defendant was very particular to state in the contract of sale that no such allowance was made.

The down payment of $517.82 in the instant case was not made in cash. Defendant misrepresented the facts in relation thereto.

It is urged, however, that the respondent had no intention to mislead the plaintiff. As this is an action founded on a rescission, the intent to deceive is not important. It would be different if this were an action for deceit. A contract may be rescinded for a mistake or innocent misrepresentation of a material fact. (*Leary* v. *Geller*, 224 N. Y. 56; *Bloomquist* v. *Farson*, 222 id. 375; *Wood* v. *Dudley*, 188 App. Div. 136.)

Before it purchased this contract and note, plaintiff caused an investigation to be made of the financial standing of the Chamber-

lains. Defendant urges that plaintiff, in making this purchase, must have depended, to some extent at least, on such investigation, and, therefore, did not place sole reliance on the representations of the defendant. The false statement of the defendant is sufficient to sustain this action, if it was one of the things which influenced the plaintiff to buy this contract, although there may have been other inducements. (*Ochs* v. *Woods*, 221 N. Y. 335, 338; *Laska* v. *Harris*, 215 id. 554; *Kley* v. *Healy*, 127 id. 555; *Strong* v. *Strong*, 102 id. 69; *Morgan* v. *Skiddy*, 62 id. 319.)

The fact that the note which accompanied the contract was indorsed to the order of the plaintiff " without recourse " does not relieve the defendant from liability in an action upon a rescission of the contract to recover the amount paid for the property purchased. The transfer of the note was a part of the entire transaction, which was tainted with fraud; it stands on the same footing and is subject to the same condemnation as the sales contract. (*Bridger* v. *Goldsmith*, 143 N. Y. 424.)

It is urged, and the referee has found, that the plaintiff suffered no damage because of this misstatement of fact, and that this action cannot, therefore, be maintained. Attention is called to the well-recognized rule that damage or prejudice must be shown to maintain an action in fraud; that no matter how reprehensible an untrue and false statement of fact may be, the law will not recognize it as the basis of relief, unless damage results therefrom; that fraud without damage or damage without fraud is not actionable. *Urtz* v. *New York Central & Hudson River Railroad Co.* (202 N. Y. 170) and kindred cases laying down this rule are cited. These cases were brought to recover damages for deceit, where the defrauded party elected to affirm the contract, and sue for the loss sustained, and where the measure of damage would be the difference in value of the article sold and what it would be had it been as represented. At the risk of being wearisome, attention must again be called to the fact that this is not an action to recover damages for deceit, but is brought upon a rescission of the contract to recover the consideration paid. The plaintiff asks to be put in the same position it was in before the contract was made. Under these circumstances, appellant was not bound to show that it had suffered pecuniary loss by reason of defendant's fraud. (*Harlow* v. *LaBrum*, 151 N. Y. 278; *Maybee* v. *Sullivan*, 171 App. Div. 111; *Lambert* v. *Elmendorf*, 124 id. 758; *Jahn* v. *Reynolds*, 115 id. 647; *Stewart* v. *Lester*, 49 Hun, 58; *MacLaren* v. *Cochran*, 44 Minn. 255; *Engeman* v. *Taylor*, 46 W. Va. 669; *Wilson* v. *Carpenter's Admr.*, 91 Va. 183.)

In *Harlow* v. *LaBrum* (*supra*) it was held that where a defrauded

party sought to rescind a contract, the question of whether he sustained any money damage was immaterial, because one fraudulently induced to enter into an agreement was entitled to a decree canceling the contract *ab initio*. The court says: " The true principle by which the court is to be guided in such a case is, that the party deceived has a right to have the agreement wholly set aside; if it has been obtained by fraud he is entitled to say that the misrepresentations vitiate the contract."

In *Jahn* v. *Reynolds* (*supra*) it was held that a complaint which sought a decree for the return of shares of stock exchanged for other stock on account of false representations of the defendant, was not demurrable because it did not allege that the plaintiff had been damaged.

In *Stewart* v. *Lester* (*supra*) it was held that false and fraudulent statements made by a party to a contract, and relied upon by the other party, will vitiate the agreement, if the innocent party would not have entered into the contract but for the statements, notwithstanding the fact that no pecuniary loss has been sustained by reason of the misrepresentation.

In *Maybee* v. *Sullivan* (*supra*) the defendants resisted the enforcement of a note upon the ground that it had been procured by fraud and deceit. Held, that it was not necessary for them to show that they had suffered pecuniary loss in any particular sum by reason of the false representations of the plaintiff.

In *Lambert* v. *Elmendorf* (*supra*) it was held that where the plaintiff had rescinded the sale of stocks as having been induced by fraud, he was entitled to recover the amount he had paid therefor as for money had and received.

In *MacLaren* v. *Cochran* (*supra*) it was held that where a party had been induced to enter into a contract by fraudulent representations relating to a fact which he deemed material, and upon which he had a right to rely, he might rescind the agreement upon the discovery of the fraud, and that the party in the wrong could not be heard to say that no real injury resulted from the misrepresentation.

In *Engeman* v. *Taylor* (*supra*), which was an action brought to rescind a contract for fraudulent representations, it was held that the court would not inquire into the extent of the detriment suffered by the defrauded party; that it was sufficient, to maintain the action, if the party misled had been prejudiced in any appreciable amount, no matter how trivial.

In *Wilson* v. *Carpenter's Admr.* (*supra*) it was said: " The court does not inquire with any care into the extent of the prejudice. It is sufficient if the party misled has been very slightly prejudiced — if the amount is at all appreciable."

While there is no proof that the plaintiff suffered any financial loss as the direct result of defendant's misstatement, it cannot be doubted that some detriment followed by reason thereof. The business of the plaintiff is, at best, a hazardous one. Of necessity, it takes long chances on being able to collect the amounts due on the contracts it purchases. One who has the actual cash to pay for a third of the cost of a car is naturally a better risk than one who pays nothing, but mortgages the future for the entire purchase price. A person so financially irresponsible that he is unable to pay a cent on an automobile which he buys, and who gives notes and discounts a legacy which may eventually come to him, is not a very good risk. It would not be strange if the plaintiff, had it known that fact, would have refused to accept such a risk. If a man has actually put a substantial sum in cash into a car, the chances that he will keep up future payments and eventually get title to the machine are far greater than they would be if he had mortgaged the future for the entire purchase price. As it turned out, no part of the $1,167.74 note has ever been paid.

The judgment appealed from should be reversed on the law and facts, with costs, and judgment ordered for the plaintiff for the sum of $1,035.63 and interest from June 4, 1926, and costs.

Certain findings of fact and conclusions of law are disapproved and reversed, and new findings made.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and CROSBY, JJ.

Judgment reversed on the law and facts, and judgment directed for the plaintiff for the sum of $1,035.63, with interest thereon from June 4, 1926, with costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.