## OOSTERHUIS v. PALMER.

### No. 237.

Circuit Court of Appeals, Second Circuit.

July 12, 1943.

Milton L. Romm, of Yonkers, N. Y. (Benjamin W. Moore, of Yonkers, N. Y., on the brief), for plaintiff-appellant.

John J. O'Connor, of New York City (Kermit F. Kip, of New York City, of counsel), for defendant-appellee.

Before SWAN, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

After the failure of the First National Bank and Trust Company of Yonkers, New York, in 1933, the Comptroller of the Currency levied an assessment on its stock payable June 18, 1934, and made demand on the defendant for the payment of $62,000, as the amount due upon the shares which she held. Thereupon negotiations ensued between her counsel and the receiver of the bank, Arthur E. Muth, for a compromise of the assessment; and these resulted in the fixing by the parties of a settlement figure of $35,000, based upon a survey of defendant's assets and her financial responsibility. In order to secure the approval of the Comptroller of the Currency, defendant made a lengthy "Affidavit of Personal Assets and Offer of Compromise," dated September 26, 1935, wherein she purported to list all her assets and offered to make the compromise. On the basis of this affidavit and the receiver's recommendation, the Comptroller on Oc-

tober 15, 1935, authorized the receiver to petition the court for an order accepting the settlement. The receiver acted promptly, so that on October 21, 1935, the district court, with Judge Goddard presiding, passed the necessary order; and the defendant paid the money and received a full release the next day.

In September, 1938, Walter F. Downey, who had succeeded Muth as receiver in 1937, instituted an action in the district court to collect the assessment, and, being met with the plea of the release and the statute of limitations (cf. Downey v. Palmer, D.C.S.D.N.Y., 27 F.Supp. 993), was allowed to set up in his reply the claim that the compromise had been induced by defendant's fraud. Downey v. Palmer, D.C. S.D.N.Y., 31 F.Supp. 83. Thereafter, however, the district court granted summary judgment for the defendant, holding that the claim for the stock assessment was barred under a three-year state statute of limitations, and that although a claim of fraud would not be barred until six years after its discovery, yet this action was not brought upon such a claim. Downey v. Palmer, D.C.S.D.N.Y., 32 F.Supp. 344. On appeal we reversed this judgment, 2 Cir., 114 F.2d 116, on the ground that under the liberal federal practice the action might be amended, without the necessity of suing anew, to one of fraud in effecting the compromise. On the remand plaintiff amended his complaint; and in due course a trial to a jury was had, which resulted in a verdict and judgment for defendant, and this appeal by plaintiff.

█ The main issue herein is whether knowledge of the facts constituting the fraud brought home to the receiver, but not to the Comptroller and the district court, prevents recovery. The fraud relied on was the concealment of defendant's assets with respect to her claims for commissions as executrix of the estate of her late husband. In her affidavit for the Comptroller she stated that she had been awarded and paid the total sum of $5,065.-31 as such commissions. Actually she had received this sum as commissions on income; but in the same judicial settlement by the Surrogate's Court of Westchester County to which she referred she had been awarded the additional sum of $32,928.20, as commissions on the principal of her husband's estate of $1,729,597.14, and these latter commissions remained due her from the estate. The evidence is clear that both

she and her counsel knew of the purpose of the affidavit, and there can be no doubt of the concealment except and as it is excused by the knowledge of the receiver and his assistant. The question of such knowledge upon the part of Frank F. Boone, assistant to Muth, and Muth himself was the disputed fact submitted to the jury. Defendant's lawyer testified that he discussed the matter with Boone, who advised saying nothing as to these commissions, since they were frozen, and that all the receiver was interested in was the cash defendant could raise. Boone denied this. There was also evidence of such knowledge through the receiver's attorney, upon whom the surrogate's decree had been served. In any event, the jury's verdict must be taken as settling the fact of the receiver's knowledge; and we turn, therefore, to the situation as it affected the Comptroller of the Currency and the court.

The evidence made it quite clear that neither of these officials had such knowledge. Testimony was given by the Deputy Comptroller of the Currency and his assistant, the two men who acted in the matter, that they had no such knowledge and would not have approved the compromise had they had it. Indeed, the letter of approval makes specific recitals of the marketable securities and other funds possessed by Mrs. Palmer, as shown by her affidavit, and then says: "In consideration of the information furnished, provided you are satisfied that under the terms of the will no portion of the corpus of the estate is to be received by this debtor, you are in accordance with your recommendation, authorized to petition the court for an order to accept in full settlement of the stock assessment not less than $35,000 cash." The district court's order contained similar recitals of defendant's assets in some detail, "it further appearing that Edith S. Palmer is unable to pay the full amount of said assessment." Finally Judge Goddard himself testified that he had no knowledge of this additional property and would not have approved the settlement had he had it.

Nevertheless, the district court submitted the case to the jury on the theory that knowledge of this asset by the receiver and his assistant, Boone, would be attributed to the Comptroller, whom the receiver represented, and would thus prevent recovery. This theory of the law the plaintiff challenged throughout the trial by mo-

tions for a directed verdict, by specific requests to charge, and by specific exceptions to the charge after it was delivered and before the jury retired. It is the point to which the parties have addressed themselves on this appeal.

■ It is the theory of the defendant, as it was of the court below, that the receiver is an agent of the Comptroller and that knowledge of the agent is to be attributed to the principal. In fact, it is well settled in proceedings of this character that the receiver is but an officer of the Comptroller, not of the court, and that the order of the court is not a judicial, but is rather an administrative, step in the bank's liquidation. Hulse v. Argetsinger, 2 Cir., 18 F.2d 944, 945; Roth v. Hood, 6 Cir., 106 F.2d 616; Dugger v. Cox, D.C.E.D. Tenn., 32 F.Supp. 379, affirmed 6 Cir., 116 F.2d 497; Mitchell v. Joseph, 7 Cir., 117 F.2d 253; Fox v. Young, 145 Pa.Super. 111, 20 A.2d 835; Griggs v. Baumer, 3 Cir., 130 F.2d 899; Michelsen v. Penney, 2 Cir., 135 F.2d 409, 431. But this gets us little further; indeed, it may well be argued that, since the action of the court is not a judgment completely settling all issues, both those actually before it and those which could have been brought before it, the receiver's position is strengthened rather than otherwise. For if, as said in Roth v. Hood and Fox v. Young, the statute makes the court only "a superior and advisory agent in the administrative field," we have to consider the function of the court, as well as the Comptroller, in the light of the statute and the purposes for which the condition is made, rather than by analogy to an ordinary court judgment. Moreover, a receiver of an insolvent national bank is "an agent whose authority is limited by law," and a person dealing with him officially "is presumed to have knowledge of his authority to act." Whelan v. Blankenbeckler, 5 Cir., 87 F.2d 81, 82.

The controlling statute is 12 U.S.C.A. § 67, which provides: "Any receiver of a national banking association is authorized, with the approval of the Comptroller of the Currency and upon the order of a court of record of competent jurisdiction, to compromise, either before or after judgment, the individual liability of any shareholder of such association." This statute was passed in 1930, apparently modelled directly upon the older statute for the compromise of claims and sale of assets, 12 U.S.C.A. § 192, upon which the cases hereinbefore cited have been based.[1]

■ If, as the cases thus agree, the approval of the Comptroller and the court is to be another check upon the activities of the receiver, it would seem that they, too, must act with knowledge and discretion, and that a rule of law holding them to constructive knowledge of everything the receiver knows would substantially nullify any reason for the specific requirement of their respective acts. As is well settled, the receiver is more than a mere representative of the bank and is held not estopped to challenge the validity of transactions governed by statute. Texas & P. R. Co. v. Pottorff, 291 U.S. 245, 260, 54 S.Ct. 416, 78 L.Ed. 777; Granzow v. Village of Lyons, 7 Cir., 89 F.2d 83; cf. O'Connor v. Rhodes, 65 App.D.C. 21, 79 F.2d 146, affirmed 297 U.S. 383, 56 S.Ct. 517, 80 L.Ed. 733; La Parr v. City of Rockford, Ill., 7 Cir., 100 F.2d 564, certiorari denied 307 U. S. 624, 59 S.Ct. 821, 83 L.Ed. 1502. Since all persons dealing with the receiver are charged with the extent of his authority, Whelan v. Blankenbeckler, supra, it has been held that the court may properly reject bids he has accepted, Fox v. Young, Griggs v. Boumer, and Dugger v. Cox, supra, even if he has agreed not to accept any further offers, Roth v. Hood, supra. And the courts have recognized that in "the exercise of a visitorial power," this "administrative check upon the otherwise unconditioned powers of the comptroller," as Judge L. Hand aptly puts it in Hulse v. Argetsinger, supra, 18 F.2d at page 945, "the judge is not confined to the information given him by the receiver; that would be an unreasonable limitation which would hamper him in reaching a conclusion." And so in Roth v. Hood, supra, 106 F.2d at page 618, it is said: "The court must exercise an executive, informed, independent judgment and because of the character of the proceeding, special reasons exist that it obtain adequate trustworthy information from all available sources."

■ We think, therefore, that where both the Comptroller and the court have been prevented by the fraud of the party to be benefited by their action from making that informed, independent judgment thus

---

[1] It had been held that this statute did not apply to assessments against stockholders. In re Earle, C.C.Pa., 96 F. 678; cf. In re Certain Stockholders of the California Nat. Bank, D.C.Cal., 53 F. 38; Case v. Small, C.C.La., 10 F. 722.

required, a wrong has been done the estate represented by the plaintiff. Accordingly under the precedents cited above, the receiver can properly bring suit for its redress; indeed, had the receiver declined to act, it seems that the depositors could themselves have sued. O'Connor v. Rhodes, La Parr v. City of Rockford, Ill., Michelsen v. Penney, supra. The court was therefore in error in charging the jury that knowledge on the part of the receiver would be a complete defense, and hence the judgment for defendant must be reversed.

■■ Plaintiff contends that, since the evidence negatived any knowledge upon the part of the Comptroller and the court, judgment should now be directed in his favor for the full balance of the stock assessment, to wit, $27,000. But this is an action of fraud, not for the assessment itself, and the damages for misrepresentation are the difference between the value of the thing as represented and as it was in actual fact. Ochs v. Woods, 221 N.Y. 335, 341, 117 N.E. 305; Urtz v. New York C. & H. R. R. Co., 202 N.Y. 170, 95 N.E. 711; Wood v. Dudley, 188 App.Div. 136, 176 N.Y.S. 494. The case of Gould v. Cayuga County Nat. Bank, 99 N.Y. 333, 340, 2 N. E. 16, 19, well states the appropriate rule. There the plaintiff, having a disputed claim against the defendants, had been induced by their false representation as to facts affecting its validity to compromise it for a certain sum. Upon suing for the fraud, he was held entitled to recover the amount which he could reasonably have demanded and been allowed as a final compromise above what he was actually allowed. The court said: "It is the excess of that value upon the true state of facts as known, or honestly believed, over the value fixed upon a false state of facts fraudulently asserted, which constitutes the plaintiff's actual loss from the fraud."

■ Here the plaintiff's damage would be prima facie the difference between the face of the claim and the amount paid in compromise. But the defendant might be able to show that there was no real possibility of collection of the full amount, and that some figure less than that would be all that the plaintiff could reasonably be expected to recover or to obtain in compromise of the liability. The difference between that sum and the amount actually paid would, therefore, measure the plaintiff's recovery. This presented an issue

which the defendant was entitled to submit to the jury. The case is therefore reversed and remanded for further proceedings in accordance with this opinion.